KITCHENS, Justice,
dissenting:
¶ 28. The majority employs the common law distinctions of trespasser, licensee, and invitee and determines, incorrectly, that A.D. was a licensee, rather than an invitee, of Jameson Inn when she was raped. Maj. Op. at ¶¶ 16-17. That assessment is premised on the majority’s mistaken assertion that there is undisputed fact that A.D. “enter[ed] upon the property of [the Jameson Inn] for her own convenience, pleasure or benefit....” Maj. Op. at ¶ 16.
¶ 29. Ordinarily, the determination of whether a person is an invitee, a licensee, or a trespasser is a question for the jury’s decision; however, where the facts are not in dispute, the classification becomes a *558 question of law for the trial judge. Leffler v. Sharp, 891 So.2d 152, 156 (Miss.2004) (citing Adams v. Fred’s Dollar Store of Batesville, 497 So.2d 1097, 1100 (Miss.1986)). Because contradictory deposition testimony was before the trial judge about the relevant facts, A.D.’s status is a jury question. Therefore, the trial court erred in granting summary judgment for the defendants.
¶ 30. The majority inaccurately asserts that Ann Doe entered the premises of the Jameson Inn to perform the illegal activity of smoking marihuana, and that the trial court correctly adjudicated A.D. to be a licensee. Maj. Op. at ¶ 13. In support of that assertion, the majority relies on the portion of A.D.’s deposition at which she was questioned about the contents of a statement that she had made to police. Id. However, the majority neglects to acknowledge that A.D. had made more than one statement to the police, and that she admitted having been dishonest in at least one of those statements. When questioned about her untruthfulness in the police statement, Doe responded that she was dishonest because she was scared.[36]
¶ 31. The record includes contradictory deposition testimony with regard to the purpose of A.D.’s having been inside the Jameson Inn on March 1, 2003. The child fíi’st testified that she had not wanted to go to the hotel and agreed to do so only because she did not want her friend to go there alone. A.D. also testified that she had not known whether she would smoke marihuana with her friend and the men once they had entered the hotel room. Later in her deposition, in response to a leading question of dubious clarity, A.D. tacitly acknowledged that she had gone to the hotel room to smoke marihuana. She also said that she had taken one puff of a marihuana cigarillo. AD.’s assailant, Rodriguez Smith, testified in his deposition that the group did not go to the hotel room to smoke marihuana and that no one smoked marihuana in the room on the night in question. Smith later testified that he could not remember whether anyone else had smoked marihuana that night, but he was certain that he had not. This brief review of the pertinent testimony illustrates that material facts of this case were genuinely disputed, so much so that the grant of summary judgment was inappropriate.
¶ 32. Patrons of a hotel are business invitees of the hotel. Pigg v. Express Hotel Partners, LLC, 991 So.2d 1197, 1199 (Miss.2008) (citing Thomas v. The Columbia Group, LLC, 969 So.2d 849, 852 (Miss.2007)). However, this Court has never spoken specifically on the duty, if any, owed by a hotel to a guest of a hotel guest. Florida case law is instructive on the duty owed by a hotel owner to the guest of a hotel guest.
¶ 33. In Steinberg v. Irwin Operating Co., 90 So.2d 460, 461 (Fla.1956), the Florida Supreme Court held:
There is no doubt that a registered guest of a hotel is a business invitee and is entitled to receive the degree of care applicable to invitees. We are of the view that one entering a hotel to communicate with a registered guest is entitled to receive and enjoy the same degree of care.... A hotel is not to be considered an insurer of the safety of every person who decides to roam around its lobby or other public rooms. On the other hand, by the very nature of the business, the operator of the hotel is bound to anticipate that a registered guest is apt to have business and social *559 callers. The invitation to such callers arises by operation of law and out of the relationship between the hotel and its registered guests.
Steinberg, 90 So.2d at 461. In that case, a friend of a hotel guest came to a hotel to deliver a message to the guest; however, the guest was not in his room. Id. Unable to find the hotel guest, the friend decided to explore various rooms adjacent to the lobby. Id. While thus engaged, the friend fell and suffered injuries as she walked from the “TV Room” to the “Movie Room.” Id. The Florida court found that the friend of the hotel guest “enjoyed the status of an implied invitee when she entered the hotel lobby.” Id. However, when the hotel guest was unavailable for the friend to visit, the friend became a licensee of the hotel when she began to explore various rooms adjacent to the lobby, because she had exceeded the implied invitation. Id.
¶ 34. In this case, Kelvin Washington rented a room for Smith and several other young men. After paying for the room, Washington relinquished the room keys to Smith. Smith and his cohorts invited A.D. and her friend to accompany them to the rented room. A.D. and her female friend were invited guests of Smith, a hotel guest. A.D. entered the hotel with hotel guests, accompanied the guests to their room, and later left the hotel. Accordingly, A.D. did not exceed the implied invitation of Jame-son Inn. The presence on the hotel’s premises of persons in A.D.’s circumstances was foreseeable — indeed, to be expected — by the hotel. Consistent with the persuasive reasoning of Steinberg, Doe could have been found by a trier of fact to have been the guest of a hotel guest, making her an invitee of Jameson Inn at the time of the crime perpetrated upon her.
¶ 35. Under controlling Mississippi case law, Doe’s status as invitee versus licensee is an issue of fact for a jury’s determination. Sharp, 891 So.2d at 156. Accordingly, I would reverse the trial court’s grant of summary judgment and remand the case for trial.
CHANDLER, J., JOINS THIS OPINION.

. Doe was a thirteen-year-old seventh grader at the time she was questioned. The majority concedes that the child was, in fact, raped. Maj. Op. at ¶ 11.